JAMES MAGEE v. SCOTT & HOLSTON LUMBER COMPANY.

November 13, 1899.

Nos. 11,729—(89).

## Contract to Tow Logs—Rescission.

The defendant, having nearly 7,000,000 feet of saw logs on the north shore of Lake Superior, which, when rafted, it desired towed up to its mill at Duluth, entered into a contract with the plaintiff, a Duluth tugman, to do the towing, and to assist the raftsmen with a tug in placing the booms in position and in making up the rafts. The contract contained a provision that, in case the services performed by the plaintiff should not be satisfactory, then, and in that event, the defendant reserved the. privilege of terminating the contract at any time. The services to be performed by the plaintiff required skill and care, and more especially promptness in making up the rafts and in running them when made up, owing to the fact that they would be exposed to lake storms from certain directions. When the time arrived when defendant needed the services of the plaintiff with tugs, it, having ascertained that the plaintiff had left Duluth with his tugs without leaving word where he had gone, or how long he would be absent, employed another tugman to perform the services, and, when plaintiff returned, promptly notified him that the contract was terminated, and that it would not accept his services. The evidence was conclusive that the dissatisfaction of the defendant was actual and honest, and not simulated or fraudulently pretended. In an action by the plaintiff to recover the value of his contract, *held*, that the court properly directed a verdict for the defendant. The provision referred to, considered in the light of the nature, subject, and purpose of the contract, must be construed as reserving to the defendant the absolute and unqualified right at any time to terminate the contract, so far as still executory, whenever it was dissatisfied with plaintiff's performance of the work, without any right on part of the plaintiff to call in question the reasonableness or adequacy of the grounds of its dissatisfaction, provided, only, that the dissatisfaction was actual and not merely fraudulently simulated. It was not necessary that the plaintiff should have actually performed part of the services before the defendant terminated the contract. The dissatisfaction might be based on plaintiff's delay in commencing the work as well as upon the character of services already performed.

Action in the district court for St. Louis county to recover $2,000 on a contract. The case was tried before Moer, J.,.who directed a

verdict in favor of defendant; and from an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*A. A. Harris* and *John H. Norton*, for appellant.

The contract amounts to an implied, if not express, agreement that defendant will allow plaintiff to commence work. 1 Addison, Cont. (9th Ed.) 299. If there is ambiguity, the words must be taken most strongly against the party employing them. McNeil v. Armstrong, 27 C. C. A. 16; Wetmore v. Pattison, 45 Mich. 439. Where work is to be done to the satisfaction of one party, there is a distinction between work which appeals to the taste, judgment or fancy of the party to be suited and work of which one person is as capable of judging as another. In the last class of cases, as in case of ordinary mechanical work or where quality of material is involved, the law holds that what in reason ought to satisfy a contracting party does satisfy him. Miesell v. Globe, 76 N. Y. 115, 117; Folliard v. Wallace, 2 Johns. 395; City v. Brooklyn, 47 N. Y. 475; Frary v. American Rubber Co., 52 Minn. 264. The contract falls within the second class, and hence the decision of the promisor is subject to review. Burns v. Munger, 45 Hun, 75; City v. Brooklyn, supra; Doll v. Noble, 116 N. Y. 230. The promisor cannot terminate the contract in an arbitrary and capricious manner. Duplex v. Garden, 101 N. Y. 387; Pope v. Best, 14 Mo. App. 502; McClure v. Briggs, 58 Vt. 82. The contract will be construed to mean that the work must be done to the satisfaction of a reasonable person. Keeler v. Clifford, 165 Ill. 544; Mullally v. Greenwood, 127 Mo. 138; Folliard v. Wallace, supra; Worthington v. Gwin (Ala.) 43 L. R. A. 382; Blackburn v. Reilly, 47 N. J. L. 290; Lake Shore v. Richards, 152 Ill. 59. See also Daggett v. Johnson, 49 Vt. 345, 348; Hartford v. Brush, 43 Vt. 528.

*Billson, Congdon & Dickinson,* for respondent.

"Satisfactory," as used in the contract, means satisfactory to defendant. McCormick Harvesting Mach. Co. v. Chesrown, 33 Minn. 32; Singerly v. Thayer, 108 Pa. St. 291; Adams v. Schnader, 155 Pa. St. 394, 403; Campbell P. P. Co. v. Thorp, 36 Fed. 414. The parties have a right to enter into such a contract. Taylor v.

Brewer, 1 M. & S. 290; Andrews v. Belfield, 2 C. B. (N. S.) 779. Thus in contracts involving personal taste. Gibson v. Cranage, 39 Mich. 49; Zaleski v. Clark, 44 Conn. 218. In contracts to be continued by one party so long as satisfactory to the other, the honest, though unreasonable, judgment of the latter is conclusive. Allen v. Mutual, 101 Ala. 574; Provost v. Harwood, 29 Vt. 219; Durgin v. Baker, 32 Me. 273; Rossiter v. Cooper, 23 Vt. 522; Spring v. Ansonia, 24 Hun, 175; Tyler v. Ames, 6 Lans. 280; Singerly v. Thayer, supra; Smith v. Robson, 148 N. Y. 252; Alexis v. Young, 59 Ill. App. 226, 229. A contract for manufacture or sale of personal property, to be satisfactory to the purchaser, is to be literally construed, without inquiry whether the purchaser ought to be satisfied. Thus in cases of agricultural machinery. McCormick Harvesting Mach. Co. v. Chesrown, supra; Wood v. Smith, 50 Mich. 565, 570; Osborne v. Francis, 38 W. Va. 312; Plano v. Ellis, 68 Mich. 101; Goodrich v. Van Nortwick, 43 Ill. 445. So in other cases. McCarren v. McNulty, 7 Gray, 139; Campbell P. P. Co. v. Thorp, supra; Aiken v. Hyde, 99 Mass. 183; Silsby Co. v. Town of Chico, 24 Fed. 893; Singerly v. Thayer, supra; Adams v. Schnader, supra; Brown v. Foster, 113 Mass. 136; Hartman v. Blackburn, 7 Pitts. Leg. J. 140. It is only in cases where the dissatisfied party will necessarily continue in enjoyment of the fruits of the other's labor that the court will infer that the parties could not have meant what the contract seems to imply. O'Dea v. City of Winona, 41 Minn. 424.

MITCHELL, J.

On April 27, 1898, the defendant, having nearly 7,000,000 feet of saw logs at Burlington Bay and the mouth of the Stewart river, on the north shore of Lake Superior, which it desired towed to its mill in Duluth, entered into a written contract with the plaintiff by the terms of which the latter, for an agreed consideration, undertook to do all the tug work in towing the logs, including keeping a tug at the landing whenever the booms were there, placing the booms in position so that the rafting of the logs might be performed in the most expeditious manner, and assisting the raftsmen in making up the rafts and inclosing the booms when filled, and in caring for the booms when only partially filled, and, in case of storms, remov-

ing them to a place of safety.   The contract does not state when the work under it should commence, but it is clear from the evidence that both parties intended and expected that it would be in the very near future.   The contract closed with the following provision, upon the construction and legal effect of which the decision of this case entirely depends:

"It is furthermore mutually agreed by the parties hereto that, in case the services performed by the party of the second part shall not be satisfactory, then, and in that event, the party of the first part reserves the privilege of terminating this contract at any time."

When the time arrived (about May 10) when the defendant required the services of the plaintiff with a tug down at a place where the logs were being rafted, Mr. Scott, one of the members of the company, and its general manager, went to direct the plaintiff to go down with a tug to assist the rafters, and to bring up a raft, but found that he had gone away with both his tugs without leaving word as to where he had gone or how long he would be absent. (It afterwards appeared that he had gone down the lake on a three-days trip to tow up a lot of cedar posts.)   Thereupon Mr. Scott employed another party to go down with tugs and perform the service, and, when plaintiff returned, promptly notified him that the contract was terminated, and that the defendant would no longer receive or accept his services.   Thereupon plaintiff brought this action to recover the value of his contract.

Upon the trial the evidence on part of the defendant was mainly directed to showing that it had reasonable and adequate grounds for terminating the contract, while that on part of the plaintiff was directed to showing that it had no such grounds for terminating the contract, but that plaintiff was justified by the acts and statements of the defendant in assuming that his services would not be required before his return from the three-days trip down the lake. The evidence is conclusive that the dissatisfaction of the defendant was real and honest, and not simulated, or merely fraudulently pretended.   When the evidence closed, the court directed a verdict for the defendant.

. If the contract is to be construed as reserving completely to the

defendant the right of decision whether plaintiff's performance of the services was satisfactory to it (provided, only, that its decision was honest, and not fraudulent or simulated), without being required to disclose the reasons, or account for its action, and without any right on the part of the plaintiff to question the reasonableness or adequacy of the grounds of defendant's decision, then the court properly directed a verdict.   In such case it would be enough that the defendant honestly willed to terminate the contract.   If, on the other hand, the contract is to be construed as meaning that the defendant undertook to found its determination upon grounds that were just and adequate, then it may be conceded, without deciding, that under the evidence the court should have submitted the case to the jury to determine whether the decision of the defendant terminating the contract was justifiable and based upon adequate grounds.

Contracts containing provisions that services shall be performed or an article made or furnished to the satisfaction of the promisor have given rise to much discussion by the courts.   But upon an examination of the authorities it will be found that there is a substantial agreement among all of them as to the rules of law applicable.   The only disagreement, if any, is as to the application of these rules to all the facts of a particular case, or rather as to how, on the facts, the particular contract should be construed.   The law regards the parties as competent to contract that the right of decision as to the satisfactory character of services rendered or of an article furnished shall be absolutely reserved to the party for whom the services are to be rendered or the article is to be made or furnished; and, if the facts are sufficient to show that they did so contract, their stipulation is the law of the case, at least unless there is something in the contract against public policy.   Contracts thus construed are generally those involving considerations of feelings, taste, or sentiment; as in the case of a portrait, wearing apparel, or services of a personal nature, where the personality of the one performing them is an important consideration.   The very fact that a contract involves considerations of this nature is a strong circumstance tending to show that the absolute right of decision was intended to be reserved to one of the parties.   But it is not necessary

that the contract should be of this kind. It is competent for the parties, if they so will, to make a similar agreement even as to matters only involving operative fitness, value, or mechanical utility of which others are as capable of judging as the party. This court has so held. Butler v. Winona Mill Co., 28 Minn. 205, 9 N. W. 697.

The whole question is one of construction of the contract and the intention of the parties. This is not to be determined exclusively from its mere language, but in determining what the parties meant by that language, or in what sense they used it, it must be construed in the light of the nature, subject, and purpose of the contract. And where courts have construed such a provision as meaning, not that the absolute right of decision was completely reserved to one of the parties, but that he should found his decision upon just and adequate grounds, they have based this construction upon the ground, not that the parties could not so contract, but that, in view of all the facts, they could not have intended to do so, but in incorporating such a provision into their contract they must have understood and adopted it in the latter sense. Where it would be harsh and extremely inequitable to construe the contract as giving one party the absolute and unlimited right of decision—as, for example, where the other party has performed his part of the contract, and the benefits of his performance must necessarily be retained by the promisor—the courts have been quite ready in construing the contract to lay hold of these facts as a reason for holding that the parties could not have meant to give one of the parties the absolute right of decision without being subject to have the grounds of his action inquired into, or their reasonableness and adequacy made the subject of judicial determination.

The provision in this contract was not that it should be left to the defendant whether it should pay for, or what it should pay for, services already performed, but merely the right to terminate the contract so far as it was still executory. Taking all the provisions of the contract together, it, in effect, amounted to nothing more than a contract to employ the plaintiff to perform certain services, at an agreed compensation, only so long as the manner of performance was satisfactory to the defendant. While the services to be

performed by the plaintiff were not of a personal or confidential nature, yet they were such as to require skill, and especially promptness. The price to be paid for towing, etc. (42 cents per 1,000 feet), was very small, compared with the value of the property. It was subject to the perils of navigation. It appeared that the rafts, after they were made up, would be unprotected from storms when the wind blew from certain directions. Hence the necessity for great promptness in taking them away at the earliest possible moment after they were made up. Under such circumstances nothing was more natural than that the defendant would desire to retain an unqualified right to terminate the contract whenever it became dissatisfied with plaintiff's manner of performing the work, and that it was determined that no one else should have the right to judge for it whether its action was reasonable or justifiable. We are of opinion that, under the circumstances, this is the proper construction of this contract, and just what it must be assumed the parties intended and meant by the language used in it.

It is claimed, however, that, even if this is the proper construction of the contract, yet, in view of its peculiar language ("the services performed"), the time had not arrived when the defendant had a right to exercise its decision, because the plaintiff had not yet performed any services. This is altogether too narrow and technical a construction to be placed on the contract. What it means is that, if the plaintiff did not perform the services to the satisfaction of the defendant, it should have the right to terminate the contract. Dissatisfaction might be based upon the negligence or dilatoriness of the plaintiff in commencing to perform the services as well as upon the character of services already performed. Our conclusion is that the trial court was right in directing a verdict.

Order denying a new trial affirmed.